FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 21, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

JULIE V.,[1]

              Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

              Defendant.

No.   1:25-cv-3165-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Julie V. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. Among other arguments, she contends the ALJ erroneously failed to give some res judicata effect

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

to a prior ALJ's residual functional capacity (RFC) finding. The Court agrees. As is explained below, a prior ALJ found Plaintiff limited to performing a range of sedentary work because of degenerative disc disease and limitations resulting from spinal surgery. The instant ALJ reviewed the period beginning one day later, reported evidence of continuing limitations from the same spinal issues, assessed additional severe impairments, and recognized worsening impairments, yet found Plaintiff *more* capable. The ALJ did so despite the requirement that he give at least some res judicata consideration to the prior ALJ's RFC findings absent relevant new and material evidence. The ALJ's decision and the record do not present material evidence that would justify not considering the prior RFC whatsoever. Therefore, the ALJ consequentially erred, warranting remand for further proceedings.

### I.    Background

Before she filed the instant claim, Plaintiff filed a claim for Title 2 benefits in July 2015.[2] Adjudicating that claim, ALJ Glenn Meyers

---

[2] *See* AR 145. An ALJ adjudicated an even earlier claim and found her not disabled from October 1, 2009, through March 24, 2014. AR 80–88.

DISPOSITIVE ORDER - 2

found Plaintiff not disabled from March 25, 2014, through March 28, 2018.[3] ALJ Meyers found Plaintiff had the severe impairments of lumbar and cervical degenerative disc disease, status post lumbar and cervical surgical intervention, depressive disorder, and anxiety disorder.[4] ALJ Meyers found Plaintiff had the RFC to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(a) except she could frequently use her upper extremities to handle, finger, feel, and reach at or below shoulder level; never reach overhead; occasionally stoop and crouch; and never squat, crawl, kneel, or climb.[5] ALJ Meyers' RFC also provided Plaintiff would be off-task 8% of the time; absent from work once per month; and capable of engaging in unskilled, repetitive, routine tasks in two-hour increments.[6] Based on this RFC, ALJ Meyers

---

[3] AR 162–63.

[4] AR 149.

[5] AR 151.

[6] AR 151–52.

DISPOSITIVE ORDER - 3

found Plaintiff could adjust to three "sedentary/unskilled" jobs and was therefore not disabled.[7] This Court affirmed.[8]

Plaintiff filed her instant Title 2 application for benefits in July 2021, alleging disability preventing her from working beginning October 1, 2010, which she later amended to January 27, 2020, based on the intervening nondisability decisions.[9] The Administration denied her claim initially and upon reconsideration, after which ALJ Mark Triplett ("the ALJ") held a hearing and issued a written decision.[10]

First, the ALJ reported Plaintiff's claim history and determined that the relevant period for the instant claim was March 29, 2018—the day after the prior nondisability period—through December 31, 2021—the date late insured.[11] The ALJ reported the following regarding the effect of the prior nondisability finding:

---

[7] AR 162.

[8] AR 109–41.

[9] AR 44, 355.

[10] AR 14, 37, 205, 218.

[11] AR 17.

DISPOSITIVE ORDER - 4

In the instant case, the claimant has an additional burden as a result of the previous final decision on her prior application. Prior to determining whether or not the claimant is disabled under the Regulations, it first mu[st] be determined whether or not a presumption of non-disability continues under <u>Chavez v. Bowen</u>, 844 F.2d 691 (9th Cir. 1988).

A claimant may rebut the presumption by showing a "changed circumstance" affecting the issue of disability with respect to the adjudicated period – e.g., a change in the claimant's age category, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment not previously considered, or a change in the criteria for determining disability.

After a thorough review of the record, the undersigned finds the claimant has rebutted the presumption of continuing non-disability. The record includes new evidence submitted after the prior ALJ decision that is material to the severity of the claimant's medically determinable impairments and results in a finding different from the finding made in the prior decision. The continuing presumption of nondisability has been rebutted by an alleged worsening of her impairments, new impairments not previously considered, and changes in the way we evaluate musculoskeletal impairments.[12]

Next, the ALJ carried out the five-step sequential evaluation process for determining whether a claimant is disabled, ultimately

---

[12] AR 18.

DISPOSITIVE ORDER - 5

finding Plaintiff not disabled.[13] In doing so, the ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[14] As to the medical opinions, the ALJ found:

- the reviewing opinions of Gordon Hale, MD, and Charles Murphy, MD, persuasive;
- the consultative examining opinion of Marquetta Washington, ARNP, partially persuasive; and
- the treating opinions of Betsy Kean, PA, and Craig Whittlesey, MD, not persuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2021.

---

[13] AR 18–31. *See* 20 C.F.R. § 404.1520(a)–(g).

[14] AR 23–24. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[15] AR 28–29.

DISPOSITIVE ORDER - 6

- Step one: Plaintiff had not engaged in substantial gainful activity since March 29, 2018, through her date last insured of December 31, 2021.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease; right shoulder degenerative joint disease; obesity; and carpal tunnel syndrome.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b), except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; tolerate occasional exposure to workplace vibration and hazards; frequently, but not constantly, reach with the right, dominant, upper extremity; occasionally reach overhead with the right, dominant, upper extremity; and cannot lift any weight above shoulder height with the right, dominant, upper extremity.

DISPOSITIVE ORDER - 7

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as production assembler, sales attendant, and routing clerk, all classified as "light" exertional jobs.[16]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[17] Plaintiff now appeals to district court.[18]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[19] and such error

---

[16] AR 20–30.

[17] AR 1.

[18] ECF No. 1.

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

DISPOSITIVE ORDER - 8

impacted the nondisability determination.[20] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

---

[20] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

### III.  Analysis

Plaintiff argues the ALJ erred by not giving some res judicata effect to the prior ALJ's RFC findings, by not properly assessing Plaintiff's alleged symptoms, and by not properly assessing the medical opinions. The Commissioner argues the ALJ reasonably declined to give res judicata effect to the prior RFC, reasonably found Plaintiff's symptom allegations inconsistent with the evidence, and reasonably evaluated the medical opinions.

**A.    Res judicata effect of prior ALJ findings: Plaintiff establishes consequential error.**

1.    <u>Standards</u>

In *Chavez v. Bowen*, the Ninth Circuit held that because principles of res judicata apply to administrative decisions, albeit "less rigidly" than to judicial proceedings, a claimant must prove "changed circumstances" to overcome the presumption of continuing nondisability from a prior ALJ's finding of nondisability.[22] Even when the claimant overcomes the presumption of continuing nondisability,

---

[22] *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

the prior ALJ's "findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings."[23] In *Chavez*, the claimant's attainment of "advanced age" was a changed circumstance precluding the application of res judicata to a prior ALJ's nondisability finding, but "[p]rinciples of res judicata" still "made binding the first judge's [RFC] determinations . . . ."[24] The Ninth Circuit concluded, in relevant part, "Because the second judge failed to afford preclusive effect to the first judge's determinations . . . his decision was not supported by substantial evidence."[25]

Following *Chavez*, the Social Security Administration issued Acquiescence Ruling 97-4(9), directing adjudicators to apply *Chavez* to claims in the Ninth Circuit.[26] If the claimant rebuts the presumption of continuing nondisability arising from a prior ALJ's final decision, then

---

[23] *Id.* at 694.

[24] *Id.*

[25] *Id.*

[26] Acquiescence Ruling 97-4(9) (S.S.A. Dec. 3, 1997) 1997 WL 742758.

DISPOSITIVE ORDER - 11

adjudicators "must adopt" the prior ALJ's RFC finding, among other findings, "unless there is new and material evidence relating to such a finding."[27] For purposes of this Ruling, new evidence is "material" if it "warrants a finding on residual functional capacity, education, work experience or other finding required at a step in the sequential evaluation process different than that made in the decision on the prior claim."[28] Social Security Acquiescence Rulings are "binding on all components of the Social Security Administration."[29]

Ninth Circuit cases establish when a failure to give some res judicata effect to a prior RFC finding may be harmless. In *Stubbs-Danielson v. Astrue*, the claimant received disability benefits from 1986 to 1994 and applied for benefits again in 2002, which was denied.[30] In addition to recognizing that *Chavez* does not apply to a prior finding of disability, the Ninth Circuit held that the ALJ did not improperly fail

---

[27] *Id.* at *3.

[28] Hearing, Appeals, and Litigation Law Manual (HALLEX) I-5-4-60.

[29] *Pinto v. Massanari*, 249 F.3d 840, 845 n.3 (9th Cir. 2001).

[30] 539 F.3d 1169, 1171–72 (9th Cir. 2008).

to extend some res judicata consideration to "prior findings based strictly on information already presented to the first judge" because "[t]he entirety of the medical evaluations presented with respect to the present application were conducted after [the claimant]'s 1984 initial disability determination. These evaluations necessarily presented new and material information not presented to the first ALJ."[31]

In unpublished, nonbinding decisions,[32] the Ninth Circuit found that the ALJ did not err in failing to give some res judicata consideration to a prior RFC, or any such error was harmless, when: 1) the ALJ "properly found that the new evidence of [the claimant]'s mental limitations was not material"[33]; 2) a 2020 RFC finding was based entirely on evidence that post-dated a 2012 RFC finding and the ALJ found that a specific Social Security Ruling was a change in law

---

[31] *Id.* at 1173.

[32] The Court discusses these cases only for their persuasive value, recognizing harmless error is a case-by-case, fact-specific inquiry. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

[33] *Reed v. Saul*, 834 F. App'x 326, 328 (9th Cir. 2020).

DISPOSITIVE ORDER - 13

impacting the RFC determination[34]; and 3) the second ALJ reasonably interpreted the first ALJ's RFC as effectively the same as the second ALJ's RFC.[35]

Other unpublished decisions also present circumstances when an ALJ appropriately afforded res judicata consideration to a prior finding or committed consequential error in failing to do so. In one, the ALJ appropriately "adopted many of the prior ALJ's findings in the subsequent five-step sequential evaluation pursuant to Acquiescence Ruling 97-4(9)" because "there were not material changes in [the claimant]'s condition since the prior adjudication."[36] In another, the Ninth Circuit found that "[b]ecause there is no evidence that the limitations reflected in the 2011 Decision's RFC findings improved,

---

[34] *Curtiss v. Kijakazi*, No. 22-35371, 2023 WL 3918687, at *1 (9th Cir. June 9, 2023) (unreported).

[35] *Nollen v. Kijakazi*, No. 22-35953, 2023 WL 5567175, at *1 (9th Cir. Aug. 29, 2023) (unreported).

[36] *Bauman v. O'Malley*, No. 22-35881, 2024 WL 1427037, at *1 (9th Cir. Apr. 3, 2024) (unreported).

DISPOSITIVE ORDER - 14

they should have been considered in the formulation of the 2015 Decision's RFC finding," and reversed because it could not "determine, based on the existing record, whether the ALJ would still have found [the claimant] 'not disabled' if the RFC findings in the 2011 Decision had been incorporated."[37]

### 2. ALJ's Reasons

As set out above, the ALJ found that Plaintiff rebutted the *Chavez* presumption of continuing nondisability, explaining that new evidence submitted after the 2018 ALJ decision "is material to the severity of the claimant's medically determinable impairments and results in a finding different from the finding made in the prior decision."[38] The ALJ further explained, "The continuing presumption of nondisability has been rebutted by an alleged worsening of her impairments, new impairments not previously considered, and changes

---

[37] *Drake v. Saul*, 805 F. App'x 467, 468–69 (9th Cir. 2020).

[38] AR 18.

in the way we evaluate musculoskeletal impairments."[39] The ALJ did not address specifically any of the prior ALJ's findings.

The ALJ explained the basis for Plaintiff's RFC by, first, reciting a chronology of the medical records and concluding, "Based on this discussion of the medical evidence, a limitation on the claimant to a light exertion level with restrictions on postural activities, reaching, and exposure to environmental factors as found in this decision adequately accounts for the claimant's severe medically determinable impairments."[40] The ALJ's discussion of the medical evidence reported the following medical treatment.[41] Plaintiff had a lumbar spinal fusion in April 2016 and a L4-5 decompression fusion in January 2017.[42] She had resulting severe pain that was treated throughout 2018 and 2019 with medication, epidural steroid injections, and physical therapy,

---

[39] *Id.*

[40] AR 24–27.

[41] *See id.*

[42] AR 642.

DISPOSITIVE ORDER - 16

which had varying levels of relief.[43] Physical examinations during this time revealed limited cervical and lumbar spine range of motion, diminished sensation in her left thumb, diminished but symmetric upper extremity deep tendon reflexes, mild limited hip range of motion, superficial tenderness of the lumbar region, and decreased sensation of the right big toe.[44] Physical examinations also revealed normal muscle tone, strength, gait, ambulation, reflexes, and motor function.[45]

Plaintiff reported slipping on ice and falling down stairs in January 2020, causing right shoulder pain.[46] An MRI of her right shoulder showed moderate partial thickness tearing and mild acromioclavicular joint arthritis.[47] Her primary care doctor assessed her with partial tears of two shoulder tendons and did not think she

---

[43] AR 576–89, 710–15, 740–73.

[44] AR 711, 729, 744, 751, 772.

[45] AR 640, 643, 704, 711, 720, 726, 729, 744, 751, 772.

[46] AR 871.

[47] AR 863.

DISPOSITIVE ORDER - 17

had a surgically correctable problem.[48] She was treated with pain medication, injections, and physical exercises throughout 2020, with varying levels of relief.[49]

Plaintiff reported more right shoulder pain after slipping in the shower in May 2021.[50] X-rays showed mild degenerative changes of the acromioclavicular joint, thoracic spine, right shoulder, and lumbar spine.[51] Physical examinations in 2021, during which Plaintiff continued taking pain medication and injections, revealed limited range of motion in the right shoulder, cervical spine, lumbar spine, and hip.[52] Those same examinations revealed normal gait, muscle tone, strength, grip, and ambulation.[53]

---

[48] AR 861.

[49] AR 854–56, 859, 865–68, 871–72.

[50] AR 654.

[51] AR 650–51.

[52] AR 636–37, 647–48, 651, 655.

[53] AR 636–37, 647–48, 651, 655.

Nerve studies in May 2021 revealed evidence of mild to moderate bilateral carpal tunnel syndrome (CTS).[54] Plaintiff had carpal tunnel surgery on the right side in August 2021, and on the left side in October 2021.[55] Postoperative notes reported routine healing, reduced but intermittent pain, full elbow and finger range of motion, and improved numbness and tingling.[56]

Next, the ALJ supported his RFC finding by explaining why Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with other evidence of record, relying on the medical evidence reported above as follows:

> [Plaintiff] . . . exhibited some limited cervical and lumbar spine range of motion, and at times limited right hip range of motion, positive FABER, and/or decreased right big toe sensation . . ., but intact hip range of motion at other times . . ., and otherwise often normal signs like unassisted ambulation, intact gait, intact sensation, negative straight leg raise, 5/5 strength, and normal muscle . . . . Therefore, a restriction [to] a reduced light exertion level as found in this decision is adequate to address her spinal issues and body habitus. Laboratory studies revealed bilateral CTS, but

---

[54] AR 599, 602.

[55] AR 615, 622.

[56] AR 623, 625, 890–91.

surgery improved those symptoms and functioning, and even prior to that, despite positive Tinel's and Phalen's signs, she generally was able to demonstrate upper extremity 5/5 strength and range of motion . . . . A restriction to a light exertion level with restrictions on climbing and exposure to hazards and vibration, therefore are adequate to address her history of CTS. She had a right shoulder injury, but surgery was not indicated, her symptoms and range of motion improved with injection and medication, and she continued to show 5/5 strength . . . . Therefore, a restriction to a light exertion level with restrictions on climbing, reaching, and exposure to environmental factors as found in this decision are adequate to address her shoulder issues.[57]

Finally, the ALJ supported his RFC finding by assessing the medical opinions and prior administrative medical findings.[58] The ALJ found the reviewing opinions of Drs. Hale and Murphy—who reviewed the medical records in conjunction with the Administration's initial and reconsideration decisions, respectively—persuasive because their opinions that Plaintiff could perform light work were consistent with the objective medical evidence showing a history of spinal surgeries with residual symptoms that were managed over time and normal

---

[57] AR 27–28 (citations omitted).

[58] AR 28–29.

physical examinations.[59] The ALJ found the treating opinion of orthopedic provider PA Kean not persuasive because her opinion that Plaintiff would have a four-month restriction on using her left arm post-surgery was unclear and not consistent with the evidence of healing and improved symptoms.[60] The ALJ found Dr. Whittlesey's treating opinion that Plaintiff could not work unpersuasive because the opinion was given almost two years after the date last insured and was not consistent with the evidence of record.[61] The ALJ found ARNP Washington's opinion upon examination that Plaintiff could perform light work partially persuasive because it was consistent with the medical evidence, was given only five months after the date last insured, and lacked reaching restrictions as opined by Drs. Hale and Murphy.[62]

---

[59] AR 28.

[60] *Id.*

[61] AR 29.

[62] *Id.*

DISPOSITIVE ORDER - 21

### 3.    Analysis – Legal error

The ALJ committed legal error by not completely applying *Chavez* and Acquiescence Ruling 97-4(9). The ALJ correctly stated and applied the first part of those rules when he explained that a claimant may rebut the presumption of continuing nondisability from a previous final decision by showing changed circumstances and reasonably determined that Plaintiff rebutted the presumption.[63] But there is another part to *Chavez*: even when Plaintiff presents a changed circumstance precluding the application of res judicata to the prior ALJ's final nondisability decision, the prior ALJ's RFC finding is still entitled to *some* res judicata consideration absent new and material evidence related to it.[64] There is no indication—either explicit or implicit—in the ALJ's decision that he considered whether to give any res judicata effect to the prior ALJ's RFC finding.

---

[63] AR 18. *See Chavez*, 844 F.2d at 693–94; Acquiescence Ruling 97-4(9) (S.S.A. Dec. 3, 1997) 1997 WL 742758.

[64] *Chavez*, 844 F.2d at 694; Acquiescence Ruling 97-4(9) (S.S.A. Dec. 3, 1997) 1997 WL 742758, at *3.

DISPOSITIVE ORDER - 22

The ALJ's explanation for how Plaintiff rebutted the *Chavez* presumption further supports the ALJ seemingly not recognizing the requirement that he give some res judicata effect to the prior RFC. The ALJ first said, "The record includes new evidence submitted after the prior ALJ decision that is material to the severity of the claimant's medically determinable impairments and results in a finding different from the finding made in the prior decision."[65] But the ALJ was referring to ALJ Meyers' final nondisability finding, so the ALJ did not here address whether he considered the preclusive effect of ALJ Meyers' RFC finding. Second, the ALJ said, "The continuing presumption of nondisability has been rebutted by an alleged worsening of her impairments, new impairments not previously considered, and changes in the way we evaluate musculoskeletal impairments."[66] Again, this refers only to ALJ Meyers' final nondisability decision, not ALJ Meyers' RFC finding that was still entitled to some preclusive effect. Nor could it sensibly refer specifically

---

[65] AR 18.

[66] *Id.*

DISPOSITIVE ORDER - 23

to ALJ Meyers' RFC because ALJ Meyers found Plaintiff to have a sedentary-work RFC with more limitations than in the present light-work RFC.[67] "Worsening" and "new" impairments would not support finding Plaintiff *more* capable.

The Commissioner does not raise the argument specifically, but the Court acknowledges the potential argument that the ALJ's reference to "new evidence submitted after the prior ALJ decision that is material to the severity of the claimant's medically determinable impairments" implicitly shows that the ALJ understood that he "must adopt" the 2018 RFC "unless there is new and material evidence relating to such a finding."[68] But this argument fails because: 1) the ALJ here was referring to ALJ Meyers' final nondisability decision, not ALJ Meyers' RFC finding; 2) the ALJ's next sentence, describing new and worsening impairments, would contradict the ALJ referring to ALJ Meyers' more-limited RFC; 3) the ALJ never referenced ALJ Meyers' RFC; and 4) the ALJ never specified any "new and material evidence"

---

[67] AR 151–52. *See* 20 C.F.R. § 404.1567(a)–(b).

[68] Acquiescence Ruling 97-4(9), 1997 WL 742758, at *3.

DISPOSITIVE ORDER - 24

relating to a prior finding that Plaintiff was limited to sedentary work with further unaddressed limitations.

The Commissioner contends the ALJ declined to give res judicata consideration to the prior RFC because updated evidence showed normal physical findings, noting that the ALJ pointed to reports from April, May, June, and August 2021 reporting normal findings.[69] Accepting this argument would constitute an improper post hoc rationalization of the ALJ's decision.[70] Even though the failure to cite specific evidence is generally not a sufficient indication that the ALJ failed to consider it,[71] agreeing with the Commissioner would require the Court to improperly assume the ALJ considered whether to

---

[69] ECF No. 12 at 19–20 (citing AR 636–38, 647–48, 651, 841).

[70] *Bray v. Comm'r of Soc. Sec. Adm.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009) (recognizing that the ALJ's decision must be analyzed based on his reasoning and findings and "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

[71] *Black*, 143 F.3d at 386 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 25

weigh the prior RFC when he never mentioned it; assume the ALJ knew that a prior RFC is entitled to some res judicata effect even when the presumption of continuing nondisability is rebutted when he never said so or made findings indicating such awareness; assume the ALJ relied on some of the medical records as evidence to rebut the prior RFC when he never said so; and assume some counterintuitive basis for finding that "worsening" impairments and "new" impairments supported finding Plaintiff *more* capable.

In sum, the record does not support that the ALJ considered ALJ Meyers' 2018 RFC absent new and material evidence related to that finding as required by *Chavez* and Acquiescence Ruling 97-4(9). The ALJ therefore erred.

4.    Analysis – Consequential error

The ALJ's error impacted the sequential analysis because the ALJ's decision does not discuss "new and material evidence relating to [ALJ Meyers' RFC] finding" that would justify giving it no consideration, and considering it would affect the instant RFC

determination.[72] The prior RFC related to the period ending only one day before the period addressed by the instant decision.[73] The prior RFC addressed limitations caused by conditions that persisted in the instant relevant period.[74] RFC findings for a period ending one day earlier and based on some of the same conditions would seemingly have some weight to this ALJ because he partially credited ARNP Washington's opinion despite recognizing her examination was performed five months after the relevant period.[75] Evidence of new impairments and limitations supported that Plaintiff was even more

---

[72] AR 18. *See* Acquiescence Ruling 97-4(9) (S.S.A. Dec. 3, 1997) 1997 WL 742758, at *3; *Stubbs-Danielson*, 539 F.3d at 1173.

[73] AR 17, 162–63.

[74] AR 24–27, 151–52 (both ALJs assessing limitations based on the same degenerative disc disease and the same post-spinal surgery); AR 576–89, 642, 710–15, 740–73 (treatment records for post-spinal surgery pain management).

[75] AR 29.

DISPOSITIVE ORDER - 27

limited than in 2018.[76] In light of these facts, the normal physical exam findings and improvement post-CTS surgery discussed by the ALJ[77] would not warrant finding Plaintiff less limited without at least considering ALJ Meyers' highly relevant RFC, so such evidence is not material.[78]

Comparing this case to relevant Ninth Circuit cases discussing harmless error supports finding the ALJ's error consequential. First, ALJ Meyers' RFC was not so old as to be inconsequential.[79] Second, unlike in cases where the error was harmless, the ALJ here did not

---

[76] AR 20 (assessing right shoulder degenerative joint disease, obesity, and CTS as additional severe impairments); AR 650–51, 654, 861, 863, 871 (records of new shoulder injuries).

[77] *See* AR 623, 625, 636–37, 640, 643, 647–48, 651, 655, 704, 711, 720, 726, 729, 744, 751, 772, 890–91.

[78] *See* HALLEX I-5-4-60.

[79] *Cf. Stubbs-Danielson*, 539 F.3d at 1173 (comparing RFC for a 2002 application to a disability determination in 1984); *Curtiss*, 2023 WL 3918687, at *1 (comparing 2020 RFC to a 2012 RFC).

DISPOSITIVE ORDER - 28

even reference the prior RFC or provide a specific reason why it had no effect.[80] Instead, the most specific part of the ALJ's explanation gave reasons—"worsening" and "new" impairments—that would support adopting parts of the 2018 RFC.[81]

### 5.    Conclusion

A remand is warranted for the ALJ to give some res judicata effect to ALJ Meyers' 2018 RFC, or, if the ALJ does not, to explain which specific records warrant giving no preclusive effect to any of ALJ Meyers' RFC findings.

---

[80] *See Reed*, 834 F. App'x at 328; *Curtiss*, 2023 WL 3918687, at *1; *Nollen*, 2023 WL 5567175, at *1.

[81] *See Drake*, 805 F. App'x at 468–69 (reversing because no evidence showed improvement since a prior RFC and the record did not support finding the claimant not disabled if the prior RFC findings were not adopted); *Bauman*, 2024 WL 1427037, at *1 (affirming the ALJ's adoption of a prior ALJ's findings when there were no material changes since the prior decision).

**B.    Symptoms and Medical Opinions: The Court finds these issues moot.**

Because remand is warranted, the Court need not address Plaintiff's arguments that the ALJ improperly assessed her reported symptoms and the medical opinions.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process. On remand, the ALJ is to give ALJ Meyers' 2018 RFC findings some res judicata effect or explain which records support not doing so pursuant to *Chavez* and Acquiescence Ruling 97-4(9).

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 21st day of April 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 31